■ In the Matter of Eric Shearer, Appellant, v Jezra Spisak, Respondent. (And Another Related Proceeding.) [935 NYS2d 215]—

Spain, J.

The parties, the parents of two daughters born in 2005 and 2007, never married but lived together as a family until the summer of 2009, when respondent (hereinafter the mother) ended their relationship and petitioner (hereinafter the father) later moved out. By amended petitions, the parties each requested sole custody. The children remained with the mother in the family residence and, pursuant to temporary/interim orders, Family Court granted the parties joint legal custody of the children, with primary physical custody to the mother and parenting time with the father. Seven days of hearings were held at which 13 witnesses, including the parties, testified, and a *Lincoln* hearing was held with the older child. The court awarded the parties approximately equal parenting time, contingent on their future conduct and adherence to specified requirements; the mother was granted sole legal decision-

making authority and her home was designated as the children's primary residence for school and other purposes. The father now appeals, contending that the proof supported an award of sole custody to him rather than to the mother.

In making an initial custody determination, Family Court's focus is the best interests of the children (*see Matter of Lynch v Gillogly*, 82 AD3d 1529, 1530 [2011]), which requires consideration of all relevant factors including "the parents' ability to provide a stable home environment for the child[ren], the child[ren's] wishes, the parents' past performance, relative fitness, ability to guide and provide for the child[ren's] overall well-being, and the willingness of each parent to foster a relationship with the other parent" (*Matter of Rundall v Rundall*, 86 AD3d 700, 701 [2011]). All of the foregoing factors were addressed in great detail at the lengthy hearing, with many conflicting accounts presented. "On review, we will accord deference to Family Court's ability to observe the witnesses and assess their credibility, and will not disturb a determination so long as it is supported by a sound and substantial basis in the record" (*id.* at 701-702 [citations omitted]).

In its well reasoned and thorough decision, Family Court concluded that the "parties have had a tumultuous relationship marked by violence, emotional abuse, mental illness ([the] mother), and alcoholism ([the] father)," with some of the abuse occurring in the presence of these young children. The court aptly noted that "[b]oth parents are devoted to their children and remain very involved in their lives," but both also "have significant difficulties which have at times impaired their ability to appropriately care for their children." Given the testimony regarding the parties' history of mutual domestic violence, the father's verbal abuse of the mother, their continuing inability to communicate, their open hostility after their relationship ended, and their problematic visitation exchanges requiring police involvement, all rationally credited by Family Court, we discern no basis for disturbing its determination that, while equal parenting time on a strict schedule is appropriate, joint custody with joint decision-making is not (*see Matter of Melissa K. v Brian K.*, 72 AD3d 1129, 1131 [2010]; *Matter of Martin v Martin*, 45 AD3d 1244, 1245-1246 [2007]).

The record reveals that the parties met in the fall of 2002 and moved in together shortly thereafter; their conflicts and mutual violence, including one incident in which the father burned the mother, predated the birth of their first child. Both worked full time until the mother, a college graduate, took extended maternity leave after each birth and transitioned back into full-

time work at a university laboratory. The parents shared parenting responsibilities, with the father being the primary caregiver during the day while the mother worked, and the mother caring for the children when the father worked part time, often in the evening, and took college courses; the father earned his Bachelor's degree in 2007 and has worked full time since. The children attended day care when both parents worked. The record supports Family Court's conclusion that both parents were significantly involved in their children's upbringing and lives.

Heavy emphasis was placed and conflicting testimony was offered at the hearing on the parties' fitness, past performance and ability to care for the children, and on their respective responsibilities for their past and ongoing conflicts. The father has a history of alcohol abuse and dependency and was so diagnosed by the court-ordered psychological evaluator, Matthew D'Ortona, in 2010. The record reflects instances in which the father became intoxicated while he was the only parent at home with the children and while in the car in the family driveway, passing out. He testified to his willingness to follow any recommendations made by Family Court, to a recent evaluation finding no need for further treatment (based solely upon self-reporting and discredited by the court), and to having stopped drinking. As the court found, however, he had not successfully completed treatment or remained abstinent, and continued to minimize and lack insight into his problem, conclusions fully supported by the record.

Family Court also credited the testimony regarding the father's routine and degrading verbal abuse of the mother, and found that the father had undermined the mother's authority by openly refusing to abide her reasonable rules for the children; he was seemingly obsessed with gathering "evidence" against the mother well before and after their relationship ended (including videotaping the mother struggling with the older daughter's tantrum rather than offering help, having relatives surreptitiously recording visitation exchanges, and reporting the mother to the abuse hotline when one of the children returned from the mother's home with an innocuous scratch). D'Ortona's evaluation concluded that, in addition to alcohol dependence (which he opined to be in remission), the father had dysfunctional personality dynamics, obsessive compulsive traits, emotional over-reactivity and some nondelusional paranoia with anger problems; individual therapy and a psychiatric medication evaluation were recommended. D'Ortona concluded that the father could serve in a parental capacity.

With regard to the mother, she has a history of bipolar II dis-

order, characterized by transient mood fluctuations, irritability and hypomania, but with no delusions or psychosis. D'Ortona found some maladaptive personality functioning and recommended a psychiatric medication evaluation and individual therapy. While there was evidence that the mother had occasionally lost her temper and responded inappropriately to the older child's then-frequent tantrums and loss of control, for which the mother expressed remorse, the proof did not suggest either that this behavior was common, was related to her mental health or undermined her capability to co-parent the children.

Contrary to the father's assertion, the record as a whole establishes that "the mother recognizes her mistakes and takes responsibility for them to a far greater degree than does the father" (*Matter of Melissa K. v Brian K.*, 72 AD3d at 1132). The evidence adduced at the hearing provides the required sound and substantial basis for Family Court's determination to award sole legal custody to the mother, with equal parenting time—under strict guidelines—for both parents. Further, the court reasonably directed both parents to immediately comply with specific conditions, including obtaining psychiatric evaluations, participating in individual psychotherapy for the mother, successfully completing alcohol treatment for the father, and enrolling in a "Parents Apart" program. Both parties were assured of full access to all medical, educational and extracurricular activities and personnel, and the court stated that their failure to comply with the outlined conditions would constitute a change in circumstances permitting a modification petition. The court's determination was, in all respects, sound, fair and based upon credible testimony and will not be disturbed.

We have considered the father's remaining contentions and find them to be unavailing.

Mercure, A.P.J., Lahtinen, Malone Jr. and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.