Matter of Curtis D. v Samantha E. (2020 NY Slip Op 02137)





Matter of Curtis D. v Samantha E.


2020 NY Slip Op 02137


Decided on April 2, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 2, 2020

527936

[*1]In the Matter of Curtis D., Appellant,
v
Samantha E., Respondent.

Calendar Date: February 21, 2020

Before: Egan Jr., J.P., Lynch, Devine, Aarons and Colangelo, JJ.


Lisa K. Miller, McGraw, for appellant.
George J. Hoffman Jr., East Greenbush, for respondent.
Donna C. Chin, New York City, attorney for the child.



Egan Jr., J.P.
Appeal from an order of the Family Court of Broome County (Rosa, J.), entered October 25, 2018, which dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the unwed parents of a child (born in 2015). In December 2016, Family Court (Miller, J.) entered an order, on the father's default, awarding the mother sole legal and physical custody of the child. Family Court also issued a one-year stay-away order of protection in favor of the mother and the child. In February 2018, the father commenced this proceeding seeking to modify the December 2016 order, seeking joint legal custody of the child with shared parenting time. Following a fact-finding hearing, Family Court (Rosa, J.) continued the award of sole legal custody of the child to the mother and awarded the father supervised parenting time on alternate weekends from Saturday at 10:00 a.m. to Sunday at 4:00 p.m., with "such other or different parenting time as [the] mother and paternal grandparents or [aunt] may agree." The father appeals.
Generally, the party seeking modification of a prior order of custody and/or visitation must first demonstrate that there has been a change in circumstances since entry of the prior order to then warrant the court undertaking a best interests analysis (see Matter of Thomas KK. v Anne JJ., 176 AD3d 1354, 1355 [2019]). Here, however, the 2016 order "reserved" the father's right to file a future modification petition "without the need to show a change in circumstances" and, therefore, our inquiry turns to Family Court's determination as to the best interests of the child (see Matter of Aree RR. v John SS., 176 AD3d 1516, 1517 [2019]). On appeal, the father's sole contention is that Family Court erred by not granting him more liberal parenting time, including unsupervised parenting time.[FN1] Although visitation with the noncustodial parent is presumed to be in the best interests of the child, "[t]he determination of whether visitation should be supervised is a matter left to Family Court's sound discretion" (Matter of Naquan V. v Tia W., 172 AD3d 1467, 1469-1470 [2019]; see Matter of Heather NN. v Vinnette OO., 180 AD3d 57, 66 [2019]).
The evidence at the fact-finding hearing established that the father has a long history of opioid addiction. Following the child's birth in 2015, the parties initially resided together; however, in May 2016, Child Protective Services issued an indicated report against the father for inadequate guardianship after the mother reported finding a bag of heroin on the floor near where the child played.[FN2] The parties' relationship ended the following month and, shortly thereafter, the father was convicted of criminal possession of a controlled substance. In May or June 2017, the father was also convicted of criminal contempt and sentenced to three years of probation after he violated an order of protection in favor of the mother. To the father's credit, in November 2017, he completed a 19-day inpatient treatment program and thereafter followed through with a regimen of intensive outpatient treatment. In March 2018, however, he was arrested for driving while intoxicated after he had a "couple of beers" with a friend and drove his vehicle off the road; he was later convicted of driving while ability impaired. Despite this setback, the father completed outpatient treatment in June 2018 and, since the commencement of his 2017 probation, he has consistently tested negative for drug use. The father has also maintained full-time employment as a subcontractor and resides with his parents and his 16-year-old son from a prior relationship, of whom he has full custody. Further, from February 2017 to February 2018, with the mother's consent, he regularly exercised supervised visitation with the child on alternating weekends and one weekday each week at his parents' home, and the paternal grandfather and the father's sister both testified that, having supervised such visitation, they perceive no safety concerns with his visitation with the child.
Despite the father's laudable treatment gains, however, his sobriety is a relatively new development. He continues to be medically assisted in treatment via a twice daily regimen of Suboxone and, per his own self-assessment, it is "an everyday fight to stay away from [his] addiction." The father's testimony further revealed that he tends to minimize his conduct and deflect blame for his poor decision-making. On the record before us, therefore, and according deference to Family Court's fact-finding and credibility assessments, we find that there is a sound and substantial basis in the record supporting Family Court's determination to award the father supervised visitation (see Matter of Carrie ZZ. v Aaron YY., 178 AD3d 1291, 1292-1293 [2019]; Matter of Williams v Patinka, 144 AD3d 1432, 1433 [2016]; compare Matter of Spoor v Carney, 149 AD3d 1209, 1210-1211 [2017]).
Additionally, contrary to the father's assertion, Family Court's order did not result in an inappropriate reduction of his parenting time. Although the mother had consented to provide the father with certain periods of supervised parenting time between February 2017 and February 2018, prior to Family Court's June 2018 temporary order and its final October 2018 order, the father did not previously enjoy any judicially enforceable parenting time under the prior 2016 order. Further, although the mother initially indicated her willingness at the outset of the fact-finding hearing to stipulate to a parenting schedule that would allow the father to ultimately graduate to unsupervised visitation, no such stipulation was ultimately agreed upon, let alone entered into on the record. Moreover, Family Court's October 2018 order provides that, in addition to the specifically scheduled parenting time, "the father may have such other or different parenting time as [the] mother and paternal grandparents or [aunt] may agree." Based on the foregoing, we find that Family Court appropriately structured a parenting schedule that results in the father having frequent and regular access to the child, while addressing the credible safety concerns set forth by the mother, such that, under these circumstances, we perceive no reason to disturb it (see Matter of Lynn X. v Donald X., 162 AD3d 1276, 1277-1278 [2018]; Matter of Vincente X. v Tiana Y., 154 AD3d 1113, 1115 [2017]; Matter of Adam E. v Heather F., 151 AD3d 1212, 1214-1215 [2017]). Ultimately, should the father continue to maintain his sobriety, continue compliance with the requirements of probation and continue to regularly and appropriately exercise his scheduled supervised parenting time with the child, he remains free to petition Family Court for expanded visitation upon presentation of proof of his continued advancement in sobriety (see Matter of Carrie ZZ. v Aaron YY., 178 AD3d at 1292-1293).
Lynch, Devine, Aarons and Colangelo, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The father does not challenge Family Court's award of sole legal custody to the mother. Moreover, we note that Family Court's October 2018 order specifically provides that the father "shall have independent access to the child's health care, educational and religious records."

Footnote 2: The father admittedly did not cooperate with Child Protective Services' subsequent investigation.