Matter of Austin ZZ. v Aimee A. (2021 NY Slip Op 01109)





Matter of Austin ZZ. v Aimee A.


2021 NY Slip Op 01109


Decided on February 18, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 18, 2021

531065

[*1]In the Matter of Austin ZZ., Respondent,
v
Aimee A., Appellant.

Calendar Date: January 13, 2021

Before: Egan Jr., J.P., Clark, Pritzker, Reynolds Fitzgerald and Colangelo, JJ.


Lindsay H. Kaplan, Kingston, for appellant.
Austin ZZ., New Paltz, respondent pro se.
Betty J. Potenza, Highland, attorney for the child.



Clark, J.
Appeal from an order of the Family Court of Ulster County (Savona, J.), entered February 18, 2020, which partially granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of a child (born in 2014). Pursuant to a January 2018 order, entered upon stipulation, the mother had sole legal and primary physical custody of the child and the father had parenting time on alternate weekends and certain holidays. Under the terms of the order, each parent was to have "direct access" to the child's medical, dental and educational records and providers and to "cooperate and execute any documentation to effectuate the release of information to the other parent." The order also required the father to complete a specified parenting course and to attend "individual and group therapy for alcohol and substance abuse treatment with a focus area to include anger management and domestic violence" until successfully discharged.
In April 2018, the father commenced this proceeding alleging that the mother had repeatedly violated the January 2018 order and seeking to modify the order by awarding him sole legal and primary physical custody of the child.[FN1] Two days later, the father filed an emergency modification petition seeking temporary sole legal and primary physical custody of the child. Family Court conducted a fact-finding hearing and a Lincoln hearing over a period of more than 10 months and, during the pendency of the hearing, entered a number of temporary orders. The last such order, entered in May 2019, temporarily modified the January 2018 order to give the father joint legal custody and additional parenting time. Ultimately, following the conclusion of the fact-finding hearing, Family Court determined that there had been a change in circumstances warranting an inquiry into the best interests of the child and, upon conducting such inquiry, concluded that the child's best interests would be served by awarding the parents joint legal and shared physical custody. The mother appeals, arguing that the father failed to demonstrate the requisite change in circumstances and that an award of joint legal custody was not in the child's best interests.[FN2]
Ordinarily, the party seeking to modify a prior order of custody must first demonstrate that there has been a change in circumstances since entry of the prior order that warrants an inquiry into the best interests of the child and, if so, that modification of that prior order is necessary to ensure the best interests of the child (see Matter of Amanda I. v Michael I., 185 AD3d 1252, 1254 [2020]; Matter of Cameron ZZ. v Ashton B., 183 AD3d 1076, 1078 [2020], lv denied 35 NY3d 913 [2020]). This requirement may, however, be circumvented when the prior custody order provides that the satisfaction of certain conditions will constitute the necessary change in circumstances [*2](see e.g. Matter of Curtis D. v Samantha E., 182 AD3d 655, 656 [2020]; Matter of Steven EE. v Laura EE., 176 AD3d 1323, 1324 [2019]).
Here, the January 2018 order expressly stated that the father's successful completion of a particular 28-week parenting course, as well as "individual and group therapy for alcohol and substance abuse treatment with a focus area to include anger management and domestic violence," would constitute a change in circumstances permitting him to file a modification petition. However, at the time that the father filed his modification petition, he had not completed all of the required programs and, thus, the "automatic" change in circumstances provision included in the January 2018 order had not been triggered (see Matter of Anthony F. v Christy G., 180 AD3d 1197, 1198 [2020]). Nevertheless, we find that the evidence presented by the father at the fact-finding hearing demonstrated the requisite change in circumstances since entry of the January 2018 order. Indeed, at the fact-finding hearing, the father presented proof that, since filing his petition, he had completed the 28-week parenting course and a domestic violence program, was engaged in treatment with a therapist and had undergone a substance abuse evaluation, with no treatment having been recommended. The father also provided proof of the mother's ongoing attempts to exclude him from the child's mental health treatment, the mother's continued interference with his access to the child's records and the mother having made derogatory statements about the father in the child's presence. Together, the foregoing evidence established a change in circumstances warranting an inquiry into the best interests of the child (see Matter of Crystal F. v Ian G., 145 AD3d 1379, 1381-1382 [2016]; compare Matter of Sparling v Robinson, 35 AD3d 1142, 1143 [2006]).
In determining whether modification of a prior custody order will serve the best interests of the child, "courts must consider a variety of factors, including the quality of the parents' respective home environments, the need for stability in the child's life, each parent's willingness to promote a positive relationship between the child and the other parent and each parent's past performance, relative fitness and ability to provide for the child's intellectual and emotional development and overall well-being" (Matter of Shirreece AA. v Matthew BB., 166 AD3d 1419, 1421 [2018]; see Matter of Samantha GG. v George HH., 177 AD3d 1139, 1140 [2019]). Given that Family Court is in a superior position to evaluate the testimony and credibility of witnesses, we accord great deference to its factual findings and credibility assessments and will not disturb its determination if supported by a sound and substantial basis in the record (see Matter of Matthew DD. v Amanda EE., 187 AD3d 1382, 1383 [2020]; Matter of Damian R. v Lydia S., 182 AD3d 650, 651 [2020]).
The evidence established that, at the time of the fact-finding hearing[*3], the father was subject to an eight-year order of protection and serving a five-year term of probation for criminal contempt in the first degree and driving while intoxicated. The order of protection and term of probation resulted from an incident in which the father was intoxicated and hit and kicked the mother in the presence of the child, in violation of a prior order of protection. The evidence, including testimony from the father's probation officer, demonstrated that, since the incident, the father had accepted responsibility for his actions, was addressing his issues through therapy and various courses and had complied with all of the terms of his probation, including the requirement that he submit to and pass random drug screenings. There was no indication that the father had acted inappropriately toward the mother or the child since the underlying domestic violence incident. Rather, as Family Court found, the evidence demonstrated that the father had "grown into a caring, concerned, involved and appropriate parent."
It was evident from the proof that the father's perpetration of acts of domestic violence against the mother had a profound impact upon the mother's mental and emotional well-being. The evidence also demonstrated that the mother's mental health issues had begun to negatively impact the child and his relationship with the father. Indeed, Family Court received evidence, including various medical records pertaining to the child, that demonstrated the mother's tendency to engage in inappropriate behavior in the presence of the child, her attempts to exclude the father from the child's mental health treatment and her ongoing efforts to obtain an autism diagnosis for the child, despite having received medical opinions that such diagnosis was not indicated.[FN3] As established by their respective testimony, the mother believed the child to be autistic, while the father did not. However, the father had no issue with the services that the child was already receiving.[FN4]
More specifically, a psychologist and licensed mental health counselor who treated the child testified that, based upon his interactions with the mother, it was clear that the mother did not want the father to be involved in the child's mental health treatment and that the mother wanted him to find the child to be disabled even if he did not share her beliefs. He stated that his relationship with the mother began to sour after he told her that he was not a psychiatrist and, therefore, could not diagnose the child with autism. He testified that his relationship with the mother further deteriorated when he told her that he had spoken to the father after conferring with the attorney for the child. He stated that the mother "exploded" upon hearing of his contact with the father and made derogatory comments and vilified the father in the presence of the child, which caused the child to become visibly agitated and upset. The psychologist testified that, given the mother's [*4]behavior and attitude toward him, he ultimately discontinued his treatment of the child. Notably, the evidence established that, as a result of the mother's inappropriate behavior, the child's next mental health counselor banned the mother from attending the child's therapy sessions. The testimony further showed that not only did the mother demean the father in front of the child at a therapy appointment, but that she had engaged in similar conduct during a custodial exchange of the child and at a school meeting.
Further, the psychologist who administered a court-ordered psychological evaluation testified that the mother suffered from posttraumatic stress disorder and was tracking on the continuum of paranoia. According to the psychologist, the mother intractably believes that there is a conspiracy against her and the child and that the court system was precluding her from pursuing necessary medical care for her child. The psychologist described the mother as impulsive and an inaccurate historian and asserted that, given the mother's fear of the father, she was incapable of regarding the father as an equal parenting partner. In contrast, the psychologist opined that the father was a psychologically reasonable parent, who would support the child's relationship with the mother.
Upon review of the evidence and deferring to Family Court's credibility determinations, we find that a sound and substantial basis exists in the record to support Family Court's determination to grant the parents joint legal custody and shared physical custody. In so concluding, we do not seek to diminish the physical, mental and emotional harm inflicted upon the mother by the father. Indeed, joint legal custody is generally inadvisable where there is a history of domestic violence (see Matter of Jillian EE. v Kane FF., 165 AD3d 1407, 1408-1409 [2018], lv denied 32 NY3d 912 [2019]; Matter of Fountain v Fountain, 130 AD3d 1107, 1108-1109 [2015]). However, here, Family Court reasonably found that joint legal custody was feasible and would promote the best interests of the child. The evidence showed that, despite their respective shortcomings, both the mother and the father are loving and involved parents and that the child is bonded with each parent. The evidence also demonstrated that, as between the two parents, the father was more willing to foster a positive relationship between the child and the mother. Significantly, despite their history, the parents have been able to effectively communicate about the child, as evidenced by their voluminous exchanges within the mandated "Talking Parents" application. Accordingly, inasmuch as we find Family Court's determination to be supported by a sound and substantial basis in the record, we find no basis upon which to disturb it (see Matter of Lawrence v Kowatch, 119 AD3d 1004, 1005-1006 [2014]; compare Matter of Shearer v Spisak, 90 AD3d 1346, 1348-1349 [2011]).
Egan Jr., J.P., Pritzker, Reynolds Fitzgerald and Colangelo[*5], JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: Notably, about three weeks before the father filed his petition, the attorney for the child filed a modification petition alleging that the mother had been excluding the father from the child's therapy sessions and seeking an order requiring the mother to keep the child enrolled in therapy.

Footnote 2: Like the father, the attorney for the child asserts that Family Court's determination is supported by a sound and substantial basis in the record.

Footnote 3: The evidence revealed that the mother repeatedly changed the child's pediatricians. In fact, the child had four pediatricians during his short life, with the first pediatrician treating him for three years.

Footnote 4: School and medical records established that the child had early intervention services for certain special needs that were being addressed by speech and occupational therapy, as well as an individualized education plan.