Matter of Damon B. v Amanda C. (2021 NY Slip Op 03502)





Matter of Damon B. v Amanda C.


2021 NY Slip Op 03502


Decided on June 3, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:June 3, 2021

531188
[*1]In the Matter of Damon B., Respondent,
v
Amanda C., Appellant. (And Another Related Proceeding.)

Calendar Date:April 27, 2021

Before:Garry, P.J., Egan Jr., Lynch and Colangelo, JJ.

Harpremjeet Kaur, Cooperstown, for appellant.
Rural Law Center of New York, Castleton (Kelly L. Egan of counsel), for respondent.
Christopher Hammond, Cooperstown, attorney for the child.



Garry, P.J.
Appeal from an order of the Family Court of Otsego County (Burns, J.), entered April 1, 2020, which, among other things, partially granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of one child (born in 2013). In 2016, the mother filed a family offense petition against the father, and an order of protection was entered against him in favor of the mother. Family Court subsequently granted the mother sole legal and primary physical custody of the child, with the father having parenting time as agreed upon by the parties and arranged through a third party. Following an alleged incident of domestic violence in the father's home in January 2019, the mother did not allow the father to exercise any parenting time. In March 2019, the father brought a petition to modify the 2016 order, seeking joint custody and a fixed parenting time schedule. The following month, the mother brought a modification petition seeking supervised parenting time for the father, citing the January 2019 incident and alleging that the father also used marihuana in the child's presence. The court issued a temporary order in March 2020 that allowed the father supervised parenting time for two hours a week in a public place. Following a fact-finding hearing, the court ordered that the mother would retain sole legal and primary physical custody, but granted the father unsupervised parenting time on a fixed schedule, with the first two visits being six hours and graduating to overnight visits on the weekends. The mother appeals.[FN1]
"A parent seeking to modify an existing custody and parenting time order first must demonstrate that a change in circumstances has occurred since the entry thereof to warrant the court undertaking a best interests analysis" (Matter of Kelly CC. v Zaron BB., 191 AD3d 1101, 1102 [2021] [internal quotation marks, ellipsis and citations omitted]; see Matter of Kanya J. v Christopher K., 175 AD3d 760, 761 [2019], lvs denied 34 NY3d 905, 906 [2019]). Here, although Family Court did not make an express finding of a change in circumstances, this issue is not disputed by the parties, and the record reveals that the mother refused to allow the father to exercise his parenting time. We thus find that the father demonstrated the requisite change in circumstances (see Matter of Sanchez v Santiago, 154 AD3d 1099, 1099-1100 [2017]; compare Matter of Ramon ZZ. v Amanda YY., 189 AD3d 1913, 1915-1916 [2020]).
In determining a child's best interests, "courts must consider a variety of factors, including the quality of the parents' respective home environments, the need for stability in the child's life, each parent's willingness to promote a positive relationship between the child and the other parent and each parent's past performance, relative fitness and ability to provide for the child's [*2]intellectual and emotional development and overall well-being" (Matter of Austin ZZ. v Aimee A., 191 AD3d 1134, 1136 [2021] [internal quotation marks and citations omitted]). "Because the best interests of a child generally lie with a healthy, meaningful relationship with both parents, parenting time with a noncustodial parent is presumed to be in a child's best interests" (Matter of Jill Q. v James R., 185 AD3d 1106, 1108 [2020] [internal quotation marks, brackets and citations omitted]; see Matter of Michael U. v Barbara U., 189 AD3d 1909, 1910 [2020]), and Family Court may award supervised visitation if unsupervised visitation "would be detrimental to the child['s] safety because the parent is unable or unwilling to discharge his or her parental responsibility properly" (Matter of Williams v Patinka, 144 AD3d 1432, 1433 [2016] [internal quotation marks and citations omitted]; accord Matter of Jorge JJ. v Erica II., 191 AD3d 1188, 1191 [2021]).
At the hearing, Family Court took judicial notice of prior proceedings regarding the parties, including the 2016 proceeding that resulted in the order of protection in favor of the mother and a 2017 neglect proceeding against the mother.[FN2] The father testified that he is employed and shares an apartment with a female roommate (hereinafter the roommate), who often helps with child care and other household tasks. He testified that he has joint custody of his two other children, regularly cares for them, and wants the child to know his half siblings. The father described his relationship with the mother, indicating that they communicate via text message through a third party, either one of the father's siblings or the roommate, and there have been instances where the mother has blocked communications from the third parties. The father stated that he had only exercised parenting time once or twice in the two to three months prior to the hearing.
As to the mother's allegation of domestic violence, the father testified that, in January 2019, he and the roommate became involved in a verbal argument and the father broke a dresser drawer belonging to the roommate. The father stated that the subject child and one of his other children were in the apartment, but that they were in another room when it occurred. Following this incident, the father took the children and left the apartment, while the roommate called the police to report the damaged property. The father denied any physical violence against the roommate. He further testified that the mother addressed the incident with him, and he assured her that it was not a common occurrence in his home. The father acknowledged that it was not in the child's best interests to witness arguments in the household and noted that he tries not to involve children in adult conversations or situations. He testified that his interactions with his children differs from interactions with adults, indicating that he does not "get loud" with his children, but rather talks [*3]to them in a "very friendly, very nice" manner. The father also testified that he has smoked marihuana, but not around the child, and that he had several temporary jobs in the months before the hearing, all of which required passing drug tests.
The mother testified that upon learning about the January 2019 incident in the father's home, she spoke to the father about the incident and alleged that "he down played the situation." The mother stated that she "did [not] feel safe" sending the child to the father's home and unilaterally ceased the father's parenting time, telling the father to file a petition in Family Court, and she later filed a petition seeking supervised parenting time for the father. She also confronted the father about the child smelling like marihuana, noting that the child has asthma, but she claimed that the father did not respond. Following a second visit, the mother testified that the child returned smelling like perfume.
The mother expressed that she wants the child to have a "positive" relationship with the father and that she never denied the father parenting time when he requested it, but alleged that after returning from longer visits with the father, the child would be disrespectful. The mother alleged that the 2016 order of protection arose after the father sent harassing and threatening messages to her, and testified that the father "put [her] down a lot" during their relationship, but indicated that there had not been "much physical domestic violence."
Two caseworkers who visited the father following the January 2019 incident both testified that the father acknowledged that a verbal argument occurred between the father and the roommate, but denied that the argument became physical.[FN3] Both caseworkers noted that the children were in the home at the time of the argument, and counseled the father on the effects of domestic violence on children. The roommate testified that she has lived with the father for three years and often cared for the child when the father works. She denied any physical violence between her and the father.
At the close of the hearing the attorney for the child advocated for a regular schedule of parenting time between the child and the father. The attorney for the child upon this appeal supports Family Court's order to the extent that it awarded the father unsupervised parenting time.
In considering the child's best interests, Family Court expressly evaluated the allegations against the father, including the January 2019 incident and his marihuana use. The court ordered the father to refrain from loud or confrontational arguments in the child's presence and from using marihuana during his parenting time. The court similarly addressed the father's behavior during the hearing, where he became argumentative. The father was ordered to attend at least two domestic violence sessions and to follow any recommendations, and the court encouraged him to address any anger management issues [*4]for the child's sake. Upon review, based upon the totality of the circumstances and according deference to Family Court's credibility determinations, we find that the record contains a sound and substantial basis to support the award of unsupervised parenting time to the father (see Matter of Tina RR. v Dennis RR., 143 AD3d 1195, 1199 [2016]; compare Matter of Adam E. v Heather F., 151 AD3d 1212, 1215 [2017]).
Egan Jr., Lynch and Colangelo, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: This Court granted the mother's motion for a stay pending appeal and denied the father's motion to vacate the stay (see Family Ct Act § 1114 [b]).

Footnote 2: The father was present in court for the 2017 neglect proceeding, which arose from a petition filed against the mother by the Otsego County Department of Social Services. That proceeding was adjourned in contemplation of dismissal after the mother admitted to the allegations in the petition.

Footnote 3: One of the caseworkers testified that the father was a subject of an indicated report following the January 2019 incident, but the Oneida County Department of Social Services did not file a neglect petition based on this incident.