Matter of Brett J. v Julie K. (2022 NY Slip Op 05907)

Matter of Brett J. v Julie K.

2022 NY Slip Op 05907

Decided on October 20, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 20, 2022

534013
[*1]In the Matter of Brett J., Appellant,
v
Julie K., Respondent. (Proceeding No. 1.)
In the Matter of Julie K., Respondent,
v
Brett J., Appellant. (Proceeding No. 2.) (And Two Other Related Proceedings.)

Calendar Date:September 9, 2022

Before:Garry, P.J., Egan Jr., Lynch, Clark and Ceresia, JJ.

Garufi Law, PC, Binghamton (Alena E. Van Tull of counsel), for appellant.
The Law Office of Kevin P. Flynn, Elmira (Kevin P. Flynn of counsel), for respondent.
Michelle E. Stone, Vestal, attorney for the children.

Clark, J.
Appeal from an order of the Family Court of Chemung County (Mary M. Tarantelli, J.), entered August 17, 2021, which, among other things, granted petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, to modify a prior order of custody.
Brett J. (hereinafter the father) and Julie K. (hereinafter the mother) are the divorced parents of two children (born in 2009 and 2013). Following a two-day fact-finding hearing in November 2020, Family Court dismissed the parties' cross petitions to modify a May 2019 order of custody and parenting time. However, having found that its prior order was ambiguous, the court pronounced a new order aimed at clarifying the terms of the previous order. This order, which was reduced to writing and entered on November 6, 2020 (hereinafter the November 2020 order), granted the parties joint legal custody and crafted a parenting time schedule allotting equal time to each parent.
On November 19, 2020, the father commenced the first of these Family Ct Act article 6 proceedings alleging that the mother had hurt the younger child — a matter which was under investigation by Child Protective Services (hereinafter CPS) — and seeking emergency sole legal and physical custody of the children. Family Court declined to grant the father any emergency relief but placed the matter on the court's calendar. On November 20, 2020, the mother filed her own modification petition and an order to show cause seeking sole legal and primary physical custody of the children; the court likewise denied the mother emergency relief. On November 23, 2020, the mother filed an enforcement petition alleging that the father had refused to return the children for her parenting time and that he prevented the children from contacting her. The court, through a second order to show cause entered the same day, directed that the parties resume the parenting time schedule set out in the November 2020 order. On November 25, 2020, the mother filed a second enforcement petition alleging that the father was withholding her parenting time, and the court issued an amended order to show cause amending the November 2020 order by directing that the mother be required to have a supervisor present during her parenting time but otherwise directing the parties to follow the schedule as set out in the November 2020 order.
Following a fact-finding hearing, which was held in a hybrid format,[FN1] and a Lincoln hearing,[FN2] Family Court awarded the mother sole legal custody, gave the father access to the children's providers and records, continued the shared physical custody schedule contained in the November 2020 order and put numerous conditions in place, including preventing the father's fiancÉe (hereinafter the fiancÉe) — with whom the father shares a residence — from having unsupervised contact with the children, communicating with the children's school or providers and from accessing the children's records. Finding that the father had willfully violated [*2]the November 2020 order, the court imposed a 60-day jail sentence (suspended if the father complied with the terms of the order for one year) and granted the mother 30 days of make-up parenting time. The father appeals.
The parties do not dispute that there has been a change in circumstances and, in light of the allegations made against the mother and the deterioration in the parties' communication, we agree. Therefore, we focus our inquiry on whether Family Court's custody and parenting time determinations serve the best interests of the children. "In determining the children's best interests, Family Court must consider, among other factors, the quality of the parents' respective home environments, the need for stability in the children's lives, each parent's willingness to promote a positive relationship between the children and the other parent and each parent's past performance, relative fitness and ability to provide for the children's intellectual and emotional development and overall well-being" (Matter of Benjamin V. v Shantika W., 207 AD3d 1017, 1018 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Joshua PP. v Danielle PP., 205 AD3d 1153, 1154-1155 [3d Dept 2022]). Family Court's factual findings and credibility determinations are entitled to great deference, and "will not be disturbed if they have a sound and substantial basis in the record" (Matter of Richard GG. v M. Carolyn GG., 169 AD3d 1169, 1171 [3d Dept 2019]).
The father and the attorney for the children contend that Family Court abused its discretion when it granted the mother sole legal custody of the children and continued the prior parenting time schedule, including keeping the mother's parenting time unsupervised. We disagree. Regarding legal custody, the record reveals that the parties' relationship had become increasingly acrimonious. The parties' electronic communications, which were admitted into evidence, show that the father frequently escalated minor disagreements into tirades against the mother, while the mother communicated in a more civilized fashion, choosing to disengage when appropriate rather than escalating disagreements. The record further shows that both the father and the fiancÉe engaged in a pattern of undermining behavior against the mother — by directly disparaging her and implying to the children that they were not safe while under her care. Additionally, the father had routinely failed to provide the mother with timely notice regarding the children's appointments and other extracurriculars, such as the older child's first communion, leading to the mother's exclusion from important events in the children's lives. Thus, the parties cannot effectively engage in joint decision-making. Accordingly, we find that there is a sound and substantial basis in the record to support Family Court's determination that joint legal custody was no longer feasible and that the mother was the appropriate sole legal custodian (see Matter of [*3]Rutland v O'Brien, 143 AD3d 1060, 1062-1063 [3d Dept 2016]; Matter of Scialdo v Kernan, 14 AD3d 813, 815 [3d Dept 2005]; compare Matter of David JJ. v Verna-Lee KK., 207 AD3d 841, 844 [3d Dept 2022]).
Turning to physical custody, Family Court continued a structured parenting time schedule that allowed the parents to share parenting time equally. Both parties are loving parents that provide the children with an appropriate home and are involved in the children's schooling. Yet, both parents (and the fiancÉe) have, at times, interrogated the children regarding the other household and made inappropriate comments about the other parent to the children. Although the mother has struggled with her mental health in the past, which caused the children some turmoil, she has been actively engaged in treatment and the court credited the two mental health professionals that testified they had no concerns regarding the mother's parenting ability. Under these circumstances, we find that there is a sound and substantial basis in the record to support a schedule of equally-shared parenting time (see Matter of Turner v Turner, 166 AD3d 1339, 1340 [3d Dept 2018]; Matter of Rutland v O'Brien, 143 AD3d at 1062-1063). In addition, Family Court's order takes steps to limit interaction between the parents during custodial exchanges, which may minimize the parents' friction in front of the children.
Concerning the father's allegations that the mother hurt the younger child, after reviewing the record and exhibits, we deem it appropriate to defer to Family Court's credibility determinations. Therefore, we find no reason to order that the mother's parenting time be supervised (see Matter of Damon B. v Amanda C., 195 AD3d 1107, 1109-1111 [3d Dept 2021]; compare Matter of Amanda YY. v Faisal ZZ., 198 AD3d 1125, 1128 [3d Dept 2021], lv denied 38 NY3d 908 [2022]).
Next, the father argues that Family Court abused its discretion in directing that the fiancÉe could not be unsupervised with the children and excluding her from attending the children's appointments and communicating with their providers. The children share a close bond with the fiancÉe, and she assists the father in caring for the children during his parenting time, including ensuring that the children are prepared for school on the mornings that the father works. While the record established that the fiancÉe and the mother have a contentious relationship, the record does not support a finding that unsupervised contact with the fiancÉe would be detrimental to the children's safety (see Matter of Nicole J. v Joshua J., 206 AD3d 1186, 1188 [3d Dept 2022]). Further, we recognize that, against the mother's wishes, the fiancÉe became overly involved in the children's school and other events in a way typically reserved for those in parental roles. Such overstepping behavior is addressed through the provisions preventing the fiancÉe — who is not the children's parent — from communicating with the children's school or [*4]providers and from accessing the children's records, and we decline to disturb that portion of the order.
Lastly, "[a] party seeking a finding of civil contempt based upon the violation of a court order must establish by clear and convincing evidence that the party charged with contempt had actual knowledge of a lawful, clear and unequivocal order, that the charged party disobeyed that order, and that this conduct prejudiced the opposing party's rights" (Matter of John U. v Sara U., 195 AD3d 1280, 1283 [3d Dept 2021] [internal quotation marks and citations omitted]). Whether a violation is willful "distills to a credibility determination," which we will only disturb upon "an abuse of discretion" (Matter of Tamika B. v Pamela C., 187 AD3d 1332, 1338 [3d Dept 2020] [internal quotation marks and citation omitted]).
The father does not dispute that the November 2020 order was clear, that he had notice of it or that he refused to allow the mother to take the children for her parenting time in mid-November 2020. Rather, he contends that his conduct was not willful because CPS instructed him to keep the children from the mother, as there was an ongoing investigation against her, and that Family Court's sanctions — the imposition of a 60-day suspended jail sentence and granting the mother 30 days of make-up parenting time — was excessive. Although there was an ongoing CPS investigation, the father sought emergency relief to suspend the mother's parenting time, which relief Family Court did not grant. The mother was then required to make three separate filings before the father allowed the mother to resume her court-ordered parenting time. Accordingly, and deferring to Family Court's credibility findings, we do not find that the court abused its discretion in finding that the father willfully violated the November 2020 order (see Matter of Harley K. v Brittany J., 189 AD3d 1738, 1740 [3d Dept 2020]; Matter of Richard GG. v M. Carolyn GG., 169 AD3d at 1173; Matter of Beesmer v Amato, 162 AD3d 1260, 1261-1262 [3d Dept 2018]). Similarly, while the court imposed sanctions, we do not find these excessive or stemming from an abuse of discretion (see Matter of Beesmer v Amato, 162 AD3d at 1262; Matter of Daniels v Guntert, 256 AD2d 940, 942 [3d Dept 1998]).
Garry, P.J., Egan Jr., Lynch and Ceresia, JJ., concur.
ORDERED that the order is modified, on the facts, without costs, to remove the conditions that Brett J.'s fiancÉe shall not be permitted unsupervised contact with the children nor shall she be utilized in a caregiver role, and, as so modified, affirmed.

Footnotes

Footnote 1: The parties were all present in the courtroom but some witnesses testified virtually.

Footnote 2: "[W]e . . . emphasize that both the court and counsel must respect the child's right to confidentiality during a Lincoln hearing, which is superior to the rights of the parties. . . . It follows that, in rendering a decision, a court must refrain from revealing, directly or indirectly, the confidential information shared by the child" (Matter of Theodore P. v Debra P., ___ AD3d ___, ___ [3d Dept 2022][citations omitted] [decided herewith]).