Matter of Michael NN. v Robert OO. (2022 NY Slip Op 06661)

Matter of Michael NN. v Robert OO.

2022 NY Slip Op 06661

Decided on November 23, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 23, 2022

533255
[*1]In the Matter of Michael NN., Appellant,
v
Robert OO., Respondent.

Calendar Date:October 12, 2022

Before:Lynch, J.P., Aarons, Reynolds Fitzgerald, Fisher and McShan, JJ.

John A. Cirando, Syracuse, for appellant.
Larisa Obolensky, Delhi, for respondent.
Allen E. Stone Jr., Vestal, attorney for the child.

Fisher, J.
Appeal from an order of the Family Court of Tioga County
(Matthew C. Hayden, J.), entered April 14, 2021, which partially dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of visitation.
Petitioner (hereinafter the father) is the parent of a child (born in 2005), and respondent (hereinafter the grandfather) is the child's maternal grandfather. Pursuant to an October 2014 order,[FN1] the grandfather has sole legal and physical custody of the child with the father having visitation as the parties could agree. In 2019, the father commenced a proceeding under Family Ct Act article 6 seeking to modify the order, alleging that the grandfather was denying him the ability to visit with the child and that the grandfather refused to make his phone number available. Following a fact-finding hearing, Family Court partially dismissed the modification petition and, among other things, ordered that any visitation between the father and the child be supervised and on a graduated schedule. The father appeals.
As the parties do not dispute that a change in circumstances has occurred since the entry of the prior custody order, our inquiry focuses on "whether Family Court's decision that the father have supervised visitation with the child served the child's best interests" (Matter of Christopher WW. v Avonna XX., 202 AD3d 1425, 1426 [3d Dept 2022]). "Generally, the best interests of a child lie in having [a] healthy and meaningful relationship[] with . . . [the] noncustodial parent" (Matter of Carin R. v Seth R., 196 AD3d 776, 777 [3d Dept 2021] [citations omitted]). However, Family Court has the discretion to impose supervised visitation if it determines "that unsupervised visitation would be detrimental to the child's safety because the parent is either unable or unwilling to discharge his or her parental responsibility properly" (Matter of Christopher WW. v Avonna XX., 202 AD3d at 1426 [internal quotation marks, brackets and citations omitted]; see Matter of Damon B. v Amanda C., 195 AD3d 1107, 1108 [3d Dept 2021]). "Ultimately, Family Court has broad discretion in determining whether supervised visitation is warranted, and its decision will only be disturbed by this Court when it lacks a sound and substantial basis in the record" (Matter of Michael U. v Barbara U., 189 AD3d 1909, 1911 [3d Dept 2020] [internal quotation marks and citation omitted]; see Matter of Christopher WW. v Avonna XX., 202 AD3d at 1426).
Family Court found, and the record confirms, that the father has only seen the child twice since 2014. In this regard, the father testified that he was incarcerated from 2007 to 2014, during which time he had only limited contact with the child through letters and gifts that he sent, but did not receive any response. He described the two visits that he had with the child when he was released in 2014, both occurring within a few weeks of each other. According to the father, the reason why he did [*2]not have any additional visits with the child since 2014 was because his calls were unanswered and the grandfather's phone was disconnected or no longer in service. However, the father acknowledged that he continued to have contact directly with the child. As to some of his more recent communications with the child, the father admitted to having told the child that she could come live with him or her brother if she wished and that she should "speak up in court."
In contrast, the grandfather testified that he has had the same phone number for the last 15 years and owns two businesses with publicly advertised phone numbers. After the two visits in 2014, the grandfather testified there were only two other times that the father called to request a visit; one being when the father was in town for his brother's funeral but the child was away with friends, and the other being during the start of the pandemic but the grandfather denied the request due to COVID-19 concerns. Further, the grandfather testified that, since having contact with the father through the phone and social media, the child has become more defiant and began to request to go live with her brother because he would allegedly let her have a puppy. Relating to unsupervised visits, the grandfather testified he was concerned that the father would "take off with her" and that he would become violent or start an altercation. Notably, the grandfather alleged that the father has threatened to kill him before and, therefore, expressed an interest to only have visitation in public places.
These concerns were echoed by the father's oldest daughter (hereinafter the granddaughter), who testified that she was concerned about "manipulation" of the child by the father, the potential for physical violence and that the father would not return the child after the visit. The granddaughter also testified that, since the child began having contact with the father, she has observed that the child's behavior has become more adversarial with the grandfather.
Throughout the hearing, the father expressed a desire to have time with the child by himself and noted his discomfort with conversations between him and the child not being private. Despite the father arguing that he is being denied frequent and regular access to the child, the attorney for the child supports Family Court's decision and advises that the father has not exercised any visitation since the April 2021 order.[FN2] Upon our review of the record, we agree with Family Court that graduated supervision appropriately affords the father an opportunity to build a relationship with the child while addressing the credible safety concerns set forth by the grandfather and granddaughter, and we perceive no reason to disturb this schedule (see Matter of Jorge JJ. v Erica II., 191 AD3d 1188, 1192 [3d Dept 2021]; Matter of Curtis D. v Samantha E., 182 AD3d 655, 658 [3d Dept 2020]). As such, according deference to the court's credibility determinations (see Matter [*3]of Jamie UU. v Dametrius VV., 196 AD3d 759, 762 [3d Dept 2021]), we find that a sound and substantial basis exists in the record to support Family Court's determination to grant the father supervised visitation on a graduated schedule (see Matter of Christopher WW. v Avonna XX., 202 AD3d at 1427; Matter of Carin R. v Seth R., 196 AD3d at 778). We have examined the parties' remaining contentions and have found them to be lacking merit or rendered academic.
Lynch, J.P., Aarons, Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Such order was amended in January 2018 to correct an error not relevant to this matter.

Footnote 2: At oral argument, counsel for the father confirmed this statement.