Michael T. v Rida S. (2026 NY Slip Op 01256)

Michael T. v Rida S.

2026 NY Slip Op 01256

Decided on March 5, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 5, 2026

CV-24-1130
[*1]Michael T., Respondent,
vRida S., Appellant.

Calendar Date:January 7, 2026

Before:Clark, J.P., Aarons, Pritzker, Reynolds Fitzgerald and Fisher, JJ.

Cambareri & Brenneck, Syracuse (Melissa K. Swartz of counsel), for appellant.
Miller Mayer, LLP, Ithaca (R. James Miller of counsel), for respondent.
Thomas G. Shannan, Ithaca, attorney for the child.

Aarons, J.
Appeal from a judgment of the Supreme Court (Mark Masler, J.), entered May 23, 2024 in Tompkins County, granting, among other things, plaintiff a divorce, upon a decision of the court.
Plaintiff (hereinafter the husband) and defendant (hereinafter the wife) were married in 2017 and are the parents of a child (born in 2021). In August 2023, the wife fled to Chicago, Illinois with the child without giving notice to the husband, and there commenced an Illinois divorce proceeding and sought an order of protection. The husband commenced this divorce action, and, after a determination that the child's home state was New York for jurisdictional purposes, the wife and the child returned to New York. Following a hearing, Supreme Court issued a temporary order granting the parties joint legal custody with equal parenting time and issued mutual orders of protection. A trial on the divorce action was later held, after which the court, among other things, continued joint custody and the mutual orders of protection and resolved disputed issues of equitable distribution. The court entered a judgment of divorce upon the decision, and this appeal by the wife ensued. We affirm.
Turning to the wife's challenge to joint legal custody, "[a]n initial child custody determination is to be based on the best interests of the child, taking into consideration such factors as the parents' ability to provide a stable home environment for the child, the child's wishes, the parents' past performance, relative fitness, ability to guide and provide for the child's overall well-being, and the willingness of each parent to foster a relationship with the other parent" (Jeannemarie O. v Richard P., 94 AD3d 1346, 1346 [3d Dept 2012] [internal quotation marks, brackets and citations omitted]; see Hassan v Barakat, 171 AD3d 1371, 1373 [3d Dept 2019]). "Joint legal custody is preferred and should be ordered if the parents are able to communicate and make decisions cooperatively" (Leah R. v Taylor R., 244 AD3d 1425, 1426 [3d Dept 2025] [internal quotation marks, brackets and citations omitted]). Each party testified to encouraging the child's relationship with the other party, the parties had shared decision-making authority during the six months the temporary order of custody was in effect, and they had been effectively communicating about the child through a coparenting app. The wife's allegations that the husband committed certain acts of domestic violence against her were not supported by a preponderance of the evidence, and certain other acts, even if proved, were not shown to have had an effect on the child. As such, Supreme Court appropriately declined to weigh the wife's domestic violence allegations in its best interests analysis (see Matter of Frankie CC. v Rachel CC., 225 AD3d 1112, 1115 [3d Dept 2024]; Williams v Williams, 78 AD3d 1256, 1257 [3d Dept 2010]). "[A]ccording great deference to the court's opportunity to assess the witnesses' credibility and demeanor, as well as its [*2]factual findings and conclusions" (Posporelis v Posporelis, 41 AD3d 986, 991 [3d Dept 2007]), we find the record provides a sound and substantial basis for the court's determination that joint legal custody is in the child's best interests (see Matter of Austin ZZ. v Aimee A., 191 AD3d 1134, 1138 [3d Dept 2021]).
Supreme Court's prohibition on the child's international travel is also supported by a sound and substantial basis in the record (see Matter of James U. v Catalina V., 151 AD3d 1285, 1287 [3d Dept 2017]). As mentioned, the wife took the child to Chicago without notifying the husband, which, along with evidence of her ability to work remotely and limited local ties, provided a sufficient basis to conclude that the wife was a possible flight risk (see Jin C. v Juliana L., 137 AD3d 1063, 1065 [2d Dept 2016]; compare Matter of Ece D. v Sreeram M., 177 AD3d 450, 451 [1st Dept 2019]). Although there is no dispute that fostering the child's connection with her Pakistani heritage and the mother's family was in the child's best interests, there was also evidence that the wife's parents, who live in Pakistan, were able to visit the child in the United States, and the wife's siblings lived in the United States as well. On this record, the court's international travel restriction was reasonable and will remain undisturbed (see Matter of James U. v Catalina V., 151 AD3d at 1288).
As to the wife's challenge to the three-year stay-away order of protection Supreme Court issued against her in favor of the husband, the husband testified that the wife verbally abused him and caused him physical harm on at least one occasion (see Jennifer JJ. v Scott KK., 117 AD3d 1158, 1160 [3d Dept 2014]). Thus, the order protecting the husband against the wife was not an abuse of discretion (see Domestic Relations Law § 240 [3] [a]).
Next, the wife contends that Supreme Court erred by denying specific performance of the $25,000 mehr in the nikah nama that was executed by the parties during a wedding ceremony in Pakistan, after they were married in this country.[FN1] "An agreement by the parties, made before or during the marriage, shall be valid and enforceable in a matrimonial action if such agreement is in writing, subscribed by the parties, and acknowledged or proven in the manner required to entitle a deed to be recorded" (Domestic Relations Law § 236 [B] [3]). "An acknowledgment or proof made pursuant to the provisions of [Real Property Law § 301] may be taken in the manner prescribed either by the laws of the state of New York or by the laws of the country where the acknowledgment or proof is taken. The acknowledgment or proof, if taken in the manner prescribed by the laws of such foreign country, must be accompanied by a certificate to the effect that it conforms with such laws" (Real Property Law § 301-a). The wife failed to demonstrate that the nikah nama was acknowledged in accordance with New York law, nor did she submit a certificate indicating that the nikah nama [*3]or the mehr described therein was acknowledged in conformity with Pakistani law, rendering it unenforceable (see Matisoff v Dobi, 90 NY2d 127, 138 [1997]; Khan v Hasan, 219 AD3d 1420, 1421 [2d Dept 2023]).
Lastly, we reject the wife's contention that Supreme Court erred in granting the husband a separate property credit for the closing costs on the marital residence. "When one spouse contributes separate property toward the purchase of a marital asset, such as a marital home, the contributing spouse is generally entitled to a credit representing the amount of that separate property contribution" (Beardslee v Beardslee, 124 AD3d 969, 969 [3d Dept 2015] [citation omitted]; see Ramadan v Ramadan, 195 AD3d 1174, 1175 [3d Dept 2021]). The closing costs were drawn from an account in only the husband's name containing the husband's personal injury settlement, which settlement was his separate property (see Domestic Relations Law § 236 [B] [1] [d] [2]); that account also contained funds deposited during the marriage. "[W]here separate property has been commingled with marital property, for example in a joint bank account, there is a presumption that the commingled funds constitute marital property" (Sinnott v Sinnott, 194 AD3d 868, 871 [2d Dept 2021]; see Palazolo v Palazolo, 200 AD3d 700, 701 [2d Dept 2021]). The husband rebutted the presumption of marital property, however, by demonstrating that the settlement funds remained identifiable at all times, and the closing costs could be traced to the settlement funds (see Phillips v Haralick, 70 AD3d 663, 665 [2d Dept 2010], lv dismissed 15 NY3d 874 [2010]; compare Fehring v Fehring, 58 AD3d 1061, 1062-1063 [3d Dept 2009]). We have reviewed the wife's remaining contentions, and, to the extent they have not been specifically addressed, we find them unavailing.
Clark, J.P., Pritzker, Reynolds Fitzgerald and Fisher, JJ., concur.
ORDERED that the judgment is affirmed, with costs.

Footnotes

Footnote 1: A nikah nama is a marriage contract, and, according to the wife, the mehr is the financial component of the contract payable by the husband to the wife in the event they divorce.