Matter of David JJ. v Verna-Lee KK. (2022 NY Slip Op 04338)

Matter of David JJ. v Verna-Lee KK.

2022 NY Slip Op 04338

Decided on July 7, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 7, 2022

533235
[*1]In the Matter of David JJ., Respondent,
v
Verna-Lee KK., Appellant. (And Another Related Proceeding.)

Calendar Date:June 2, 2022

Before:Garry, P.J., Egan Jr., Lynch, Reynolds Fitzgerald and McShan, JJ.

Christopher Hammond, Cooperstown, for appellant.
Renee J. Albaugh, Accord, for respondent.
Allen E. Stone Jr., Vestal, attorney for the child.

Lynch, J.
Appeal from an order of the Family Court of Broome County (Young, J.) entered March 25, 2021, which, among other things, dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of the subject child (born in 2011). A March 2019 Family Court order awarded the parties joint legal custody of the child, with primary residence to the mother. The order also provided the father with scheduled parenting time and granted the mother final decision-making authority for the child's medical and educational needs.
In April 2020, the father filed a violation petition, alleging that the mother had willfully violated the 2019 order by refusing to allow him to see or speak to the child for an extended period of time. Thereafter, in August 2020, the father filed a modification petition seeking primary physical custody of the child, arguing that a change in circumstances had occurred by virtue of the mother's refusal to allow him to have visitation with the child and her alleged lack of stable housing.
A combined fact-finding hearing ensued on the father's petitions, during which the father and the mother testified. At the hearing, the father clarified that he was only seeking compensatory and increased visitation, rather than primary physical custody as originally requested. In contrast, the mother asserted, without filing a cross petition, that she was seeking sole custody of the child due to the acrimonious relationship she had with the father. Following the hearing, Family Court dismissed the father's petitions. With respect to the violation petition, which is not contested on appeal, the court found that there was a de minimis violation but declined to find that it was willful in light of the testimony that the mother failed to bring the child for visitation for a brief period of time at the beginning of the COVID-19 pandemic due to a concern about exposing her other child, who was immunocompromised, to the virus (see Matter of Nelson UU. v Carmen VV., 202 AD3d 1414, 1416 [2022]). However, the court awarded the father make-up visitation to compensate for the lost time. With respect to the issue of custody, the court found that there had been no change in circumstances warranting a modification of the March 2019 order. The mother appeals.
The mother contends that Family Court's continuation of the joint custodial arrangement set forth in the prior order lacks a sound and substantial basis in the record. We disagree. "A parent seeking to modify an existing custody order must first show that a change in circumstances has occurred since the entry of the existing custody order that then warrants an inquiry into what custodial arrangement is in the best interests of the child" (Matter of Zachary C. v Janaye D., 199 AD3d 1267, 1267-1268 [2021] [internal quotation marks and citations omitted]; [*2]see Matter of Timothy RR. v Peggy SS., 198 AD3d 1138, 1138 [2021]). "A change in circumstances is demonstrated through new developments or changes that have occurred since the previous custody order was entered" (Matter of Ramon ZZ. v Amanda YY., 189 AD3d 1913, 1914 [2020] [internal quotation marks and citations omitted]). "While joint custody is an aspirational goal in every custody matter, such an award is inappropriate where the parties have demonstrated an inability to effectively communicate or cooperate to raise the child[]" (Matter of Clupper v Clupper, 56 AD3d 1064, 1065 [2008] [citations omitted]; see Matter of Darrow v Darrow, 106 AD3d 1388, 1390-1391 [2013]). However, the fact that there are some disagreements will not necessarily render joint custody improper where the parent's relationship "is not so acrimonious as to render the joint custody award unworkable" (Matter of Kanya J. v Christopher K., 175 AD3d 760, 763 [2019], lvs denied 34 NY3d 905, 906 [2019]; see Matter of Jessica EE. v Joshua EE., 188 AD3d 1479, 1482 [2020]). "Inasmuch as Family Court is in a superior position to evaluate witness credibility, this Court will defer to its factual findings and only assess whether its determination is supported by a sound and substantial basis in the record" (Matter of Tamara XX. v William YY., 199 AD3d 1244, 1246 [2021] [internal quotation marks, brackets and citations omitted]; Elizabeth B. v Scott B., 189 AD3d 1833, 1835 [2020]).
As previously noted, at the fact-finding hearing, the mother requested sole custody due to the mentally draining eight-year litigation history between her and the father, as well as their purported lack of communication. The mother characterized communication between them as "toxic," while noting that she was unable to discuss the child's school and medical needs with him. The mother testified that the use of "foul language" is a custom when she and the father communicate and that she is unable to make joint decisions with him. The father, in a similar fashion, characterized communication between the parties as "[b]ad," describing that most of their limited interactions lead to "arguing and fighting."
A breakdown in communication between the parties can certainly constitute a change in circumstances warranting a best interests review (see Matter of Thomas FF. v Jennifer GG., 143 AD3d 1207, 1208 [2016]). Here, however, the record indicates that the parties have always had a strained relationship and there was no showing that it had further deteriorated to such an extent that joint custody was no longer workable (see Foley v Foley, 52 AD3d 773, 774 [2008]; Matter of Blanchard v Blanchard, 304 AD2d 1048, 1049 [2003]). Notwithstanding the parties' testimony about their acrimonious relationship, there was no showing that this has had an impact on their ability to effectively coparent and care for the child (see generally Matter of Ramon ZZ. v Amanda YY., 189 AD3d at 1915; compare Matter of Kelly CC. v [*3]Zaron BB., 191 AD3d 1101, 1103 [2021]; Matter of Tod ZZ. v Paula ZZ., 113 AD3d 1005, 1006 [2014]). We also note that the current order accounts for a situation wherein the parents cannot come to an agreement about educational and medical decisions, providing the mother with final decision-making authority in such circumstances. The record demonstrates that the missed visits stemmed from the mother's fear about exposing the child's half-sibling, who is immunocompromised, to COVID-19 and not from her contempt for the father. Deferring to Family Court's factual findings and credibility assessments, we conclude that there is a sound and substantial basis in the record to support its determination that no change in circumstances was demonstrated warranting a reconsideration of the joint custodial arrangement (see Matter of Ramon ZZ. v Amanda YY., 189 AD3d at 1915; Matter of Jessica EE. v Joshua EE., 188 AD3d at 1482).[FN1]
Garry, P.J., Egan Jr., Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The father also contends that, in the absence of a cross petition by the mother seeking sole legal custody, granting her such relief would be a violation of his due process rights. In light of our determination, this argument is academic.