Matter of David BB. v Danielle CC. (2023 NY Slip Op 02570)

Matter of David BB. v Danielle CC.

2023 NY Slip Op 02570

Decided on May 11, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 11, 2023

535236
[*1]In the Matter of David BB., Respondent,
v
Danielle CC., Appellant.

Calendar Date:March 29, 2023

Before:Egan Jr., J.P., Lynch, Aarons, Fisher and McShan, JJ.

Christopher Hammond, Cooperstown, for appellant.
Hancock Estabrook, LLP, Syracuse (Alan J. Pierce of counsel), for respondent.
Lisa K. Miller, McGraw, attorney for the child.

Lynch, J.
Appeal from an order of the Family Court of Broome County (Daniel J. Fitzsimmons, Referee), entered April 12, 2022, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of a child (born in 2015). A December 2020 consent order awarded the parties joint legal custody of the child, with primary physical custody to the mother and parenting time to the father "on alternate weekends from Friday evening to Sunday evening[;] . . . every Tuesday and Wednesday overnight; [and] other and further times as reasonably arranged." The order did not contain a provision regarding the location of the child's school. At the time the order was entered, the mother was living in Cortland County, but the child was attending school in the Village of Whitney Point, Broome County, where the father resided.
In August 2021, the mother enrolled the child in a school in the Cortland City School District, prompting the father to file a modification petition seeking the child's transfer back to the Whitney Point school. In his petition, the father advocated for continuation of joint legal custody, but sought to be designated the primary residential custodian solely for the purpose of effectuating the child's enrollment into the Whitney Point School District. The father did not seek a change to the parties' parenting time schedule as set forth in the December 2020 order. Following a fact-finding hearing, Family Court awarded the parties joint legal and physical custody, ordered that the child "shall attend [school] in the Whitney Point School District," and maintained the parenting time schedule set forth in the December 2020 order. The order also contained a provision directing the father to "deliver the child" to the mother's work after school on her nights and to "make every reasonable effort including adjusting his work schedule and taking time off when necessary to fulfill this requirement." The mother appeals.
Contrary to the mother's contention, there is a sound and substantial basis in the record to support Family Court's directive that the child attend school in Whitney Point.[FN1] "A party seeking to modify a prior order of custody must show that there has been a change in circumstances since the prior order and, then, if such a change occurred, that the best interests of the child would be served by a modification of that order" (Matter of Jahleel SS. v Chanel TT., 201 AD3d 1172, 1173 [3d Dept 2022]). This Court defers to Family Court's factual findings and credibility determinations in such a proceeding, assessing only whether its determination is supported by a sound and substantial basis in the record (see Matter of David JJ. v Verna-Lee KK., 207 AD3d 841, 843 [3d Dept 2022]).
Initially, we reject the mother's assertion that Family Court erred in denying her motion to dismiss the father's petition [*2]following the close of his proof, as the testimony established a change in circumstances warranting further inquiry (see Matter of William EE. v Christy FF., 151 AD3d 1196, 1198 [3d Dept 2017]). The court did err, however, in concluding — in the order on appeal — that the mother's move to Cortland County constituted the requisite change in circumstances, for the mother was already living in Cortland County when the December 2020 order was entered (see Matter of Ramon ZZ. v Amanda YY., 189 AD3d 1913, 1914 [3d Dept 2020]).[FN2] Nevertheless, we agree with Family Court's additional finding that the mother's decision to enroll the child in school in Cortland County — a development that occurred after entry of the December 2020 order — constituted a change in circumstances warranting a best interests review, as did the parties' inability to agree on this issue (see Matter of Jennifer VV. v Lawrence WW., 186 AD3d 946, 948 [3d Dept 2020]; Matter of Jason HH. v Kylee II., 162 AD3d 1144, 1145 [3d Dept 2018]).
Turning to the best interests determination, we discern no basis upon which to disturb Family Court's determination that the child's best interests were served by returning her to school in Whitney Point. The record indicates that the travel time between the parties' homes is about a 30-minute drive. The child had attended the Whitney Point school for approximately two years prior to transferring to Cortland for kindergarten. When the child attended the Whitney Point school, she got up around 7:00 a.m. on the days she was in the father's care. By contrast, after the transfer, the child was waking up at 4:50 a.m. so the father could drive her to school before work. The father's girlfriend — with whom the child had a close relationship — was unable to drive the child to school at a later time due to a medical condition. The father testified that this arrangement had a negative impact on the child, noting that she often fell asleep on the ride back to his home. The father explained that, if the child returned to the Whitney Point school, she would take the school bus to and from school and the father's girlfriend would be responsible for getting her on and off the bus. This would allow the child to wake up nearly two hours later, around 6:45 a.m., while at the father's house. In addition to the disruption in the child's sleep, the father was also concerned about the child's well-being at the Cortland school, testifying that her demeanor changed after the transfer and that she was being bullied. The father maintained that the child had friends at the Whitney Point school and was "always excited" upon coming home when she attended school there.
With respect to the reasons underlying the transfer, the mother maintained that the Cortland school was only a six- or seven-minute drive from her home. She explained that it was difficult for her to get the child to school in Whitney Point because she had other children to drive to school and it was too expensive to [*3]drive back and forth. The mother acknowledged that the father had offered to bring the child to her job after school on the mother's nights if the child was allowed to stay in Whitney Point, but she declined this accommodation because she was skeptical that the father would be able to make it work. As for the father's contention that the child was required to wake up too early in his home, the mother explained that the child wakes up at 5:30 a.m. on the weekdays that she is in her care, regardless of whether she attends school in Whitney Point or Cortland. The mother arranged to have the child transported to the Cortland County school by her friend, together with the friend's six-year-old son. The child returned home by bus and her older siblings, two of whom were 17 years old, got her off the bus.
Although the mother was the primary physical custodian upon entry of the December 2020 order, a determination regarding the location of the child's school must be made upon the record as a whole (see Matter of Christie BB. v Isaiah CC., 194 AD3d 1130, 1133 [3d Dept 2021]). To that end, the testimony established that the mother switched the child's school primarily for logistics purposes rather than any serious concern about the quality of education she was receiving in Whitney Point. The child's attendance in the Cortland school required her to wake up earlier on days she was in the father's care, creating a situation where she was overtired by the end of the day. There was also testimony that the child had more familial support at the Whitney Point school and the father expressed his concern that she was being bullied in Cortland. According due deference to Family Court's credibility determinations, we conclude that there is a sound and substantial basis to support Family Court's finding that, at the time of the fact-finding hearing, it was in the child's best interests to attend school in Whitney Point (see Matter of Anthony YY. v Emily ZZ., 189 AD3d 1924, 1925 [3d Dept 2020]; Mann v Mann, 83 AD3d 1146, 1147 [3d Dept 2011]).[FN3]
Egan Jr., J.P., Aarons, Fisher and McShan, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The attorney for the child supports Family Court's determination in this respect.

Footnote 2: The record demonstrates that the mother was living in Cortland County prior to entry of the December 2020 order and merely moved to a different, more permanent, residence within that same county following entry thereof.

Footnote 3: Although the mother emphasizes certain testimony bearing on the father's emotional stability, this testimony pertained to incidents that occurred prior to entry of the December 2020 consent order and Family Court ultimately determined that these issues, which were confined to a limited time frame, did not impact the stability of the father's home. We also note that, although the court technically awarded the parties joint physical custody, it did so solely for purposes of facilitating the child's transfer back to school in Whitney Point. By leaving the parenting time schedule unchanged, the court effectively preserved the status quo consented to in the December 2020 order.