Matter of Ashley UU. v Ned VV. (2025 NY Slip Op 01138)

Matter of Ashley UU. v Ned VV.

2025 NY Slip Op 01138

Decided on February 27, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 27, 2025

CV-23-0224
[*1]In the Matter of Ashley UU., Appellant,
v
Ned VV., Respondent. (Proceeding No. 1.)
In the Matter of Ned VV., Respondent,
v
Ashley UU., Appellant. (Proceeding No. 2.) (And Four Other Related Proceedings.)

Calendar Date:January 9, 2025

Before:Garry, P.J., Egan Jr., Aarons, Pritzker and Lynch, JJ.

Michelle I. Rosien, Philmont, for appellant.
Amanda FiggsGanter, Albany, for respondent.
Ellen Bennett Becker, Albany, Attorney for the Child.

Pritzker, J.
Appeal from an order of the Family Court of Schenectady County (Mark Blanchfield, J.), entered January 18, 2023, which, among other things, granted petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.
Ashley UU. (hereinafter the mother) and Ned VV. (hereinafter the father) are the parents of the subject child (born in 2015). In June 2021, the mother and the father entered into a custody order upon consent in which the parties agreed to, among other things, continue sharing joint legal custody with the mother having primary physical custody and the father having parenting time on alternating weekends, as well as certain dinner visits during the week. Subsequently, in July 2021, the mother filed an enforcement petition alleging violations of the June 2021 order. Then, in September 2021, the father filed both a modification petition seeking full custody of the child and an enforcement petition alleging violations of the June 2021 order. The father subsequently filed another enforcement petition and another modification petition. The mother then filed a second enforcement petition. Following a multiday fact-finding hearing on all six petitions, as well as a Lincoln hearing, Family Court found that the mother failed to prove by clear and convincing evidence that the father violated the June 2021 order and dismissed her enforcement petitions. Although the court found that the father failed to meet his burden on one enforcement petition, it did grant the other and also granted the father's petitions for modification. Specifically, Family Court, in an extremely thorough and thoughtful order, among other things, continued joint legal custody but directed that the father would have physical custody of the child and awarded the mother parenting time three weekends every month, as well as other specific time and nightly electronic contact with the child on weeknights. The mother appeals.
The mother contends that Family Court erred in granting the father's petitions for modification because there was no evidence to suggest that a change in circumstances took place in the short time between the June 2021 custody order and the father's petitions for modification and that it is in the child's best interests for her to have primary physical custody. "A party seeking to modify a prior order of custody must show that there has been a change in circumstances since the prior order and, then, if such a change occurred, that the best interests of the child would be served by a modification of that order" (Matter of David BB. v Danielle CC., 216 AD3d 1281, 1282 [3d Dept 2023] [internal quotation marks and citation omitted]; see Matter of John M. v Tashina N., 218 AD3d 935, 936 [3d Dept 2023]). "Notably, an order on consent, without a plenary hearing, is entitled to less weight" (Matter of Virginia OO. v Alan PP., 214 AD3d 1045, 1046 [3d Dept 2023] [internal quotation marks and citations omitted[*2]]; see Matter of Jacob L. v Heather L., 228 AD3d 1191, 1193 [3d Dept 2024]). As Family Court aptly determined, due to animosity between the parties, their communication had broken down to such an extent that even routine matters were extremely difficult for the parties to discuss. The lack of communication and cooperation resulted in issues with the father exercising his parenting time, which led to the father missing a significant amount of time with the child. There were also issues involving "untoward acts" during exchanges of the child, one of which led to the child being exposed to physical danger. Given the foregoing, the father established "a sufficient change in circumstances such that the court's consideration of whether a change in custody was necessary to protect the child's best interests was warranted" (Matter of Barrett LL. v Melissa MM., 224 AD3d 942, 943 [3d Dept 2024], lv denied 42 NY3d 905 [2024]; see Matter of Alexis WW. v Adam XX., 220 AD3d 1094, 106 [3d Dept 2023]).
"Determining the child's best interests requires consideration of, among other factors, the quality of the home environments of each parent, the need for stability in the child's life, the degree to which each parent has complied with the existing custodial arrangement and whether he or she will promote a positive relationship between the child and the other parent, as well as each parent's past performance and ability to provide for the child's physical, emotional and intellectual well-being" (Matter of Ronald R. v Natasha FF., 217 AD3d 1163, 1164 [3d Dept 2023] [internal quotation marks and citations omitted]; see Matter of Mary N. v Scott M.,218 AD3d 890, 892 [3d Dept 2023]). "A custodial determination depends to a great extent upon an assessment of the testimony, character and sincerity of the parties [and,] [f]or this reason, it is well established that, given its superior position to observe the witnesses, deference is ordinarily accorded to Family Court's findings in this respect" (Matter of Joanna PP. v Ohad PP., 230 AD3d 1445, 1447 [3d Dept 2024] [internal citations omitted]; see Matter of Robert C. v Katlyn D., 230 AD3d 1392, 1394 [3d Dept 2024]).
In a 33-page decision accompanying the order on appeal, Family Court underwent an extremely detailed factual and legal analysis of the evidence presented over the five days of fact-finding. While the mother contends that certain factual findings were erroneous, we have carefully reviewed these alleged errors and find that they are supported by the record. As to the evidence as a whole, it is abundantly clear that the child has two parents who deeply love her and are both able to provide her with a suitable home. It is also clear from the record that their inability to effectively communicate is hurting nobody more than the child. In support of its decision to award the father with primary physical custody, the court cited to multiple factors, including the mother having used her role as the primary physical custodian[*3]"in a rash manner to the detriment of the father's ability to participate in the child's life and in major decisions relating to it." The court noted the mother's inability to discern how her behavior negatively impacts the child, which weighs in favor of the father being awarded primary physical custody. The court also concluded that the credible evidence demonstrated that, even bearing in mind the father's own shortcomings with respect to effectively communicating with the mother, the father was more willing to coparent and foster a relationship with the mother. Also significant to the court's determination was that the father's home is a more suitable and stable home for the child and that the father is better able to ensure the child maintains good hygiene and is properly attired. There was also significant discussion about the child's health, specifically her diet. The court carefully considered this testimony and determined that the father evinced that he was "at least aware of the importance of attending to [the child's] eating habits and weight." In considering the foregoing, as well as all of the other evidence, the court ultimately determined that it was in the child's best interests to continue joint legal custody, but change the custodial arrangement by awarding the father primary physical custody with significant parenting time to the mother. Deferring as we must to the credibility determinations rendered by Family Court, we find that the award of primary physical custody to the father is supported by a sound and substantial basis in the record (see Matter of Barrett LL. v Melissa MM., 224 AD3d at 944; Matter of Jehrica K. v Erin J., 223 AD3d 1079, 1082 [3d Dept 2024]).
We now turn to the mother's contention that Family Court erred in finding that she violated the June 2021 consent order. "[A] party seeking a finding of civil contempt based upon the violation of a court order must establish by clear and convincing evidence that the party charged with contempt had actual knowledge of a lawful, clear and unequivocal order, that the charged party disobeyed that order, and that this conduct prejudiced the opposing party's rights" (Matter of Brett J. v Julie K., 209 AD3d 1141, 1145 [3d Dept 2022] [internal quotation marks and citations omitted]; see Judiciary Law § 753; Matter of Michelle L. v Steven M., 227 AD3d 1159, 1163-1164 [3d Dept 2024]). "Although willfulness is not an element of civil contempt, inability of the alleged contemnor to comply with an order is a defense" (Matter of Jahari BB. v Zada CC., 232 AD3d 1142, 1147 [3d Dept 2024] [citations omitted]). This Court "will not disturb Family Court's determination on a violation petition absent an abuse of discretion" (Matter of Tamika B. v Pamela C., 187 AD3d 1332, 1338 [3d Dept 2020]; see Matter of Jahari BB. v Zada CC., 232 AD3d at 1147).
In his September 2, 2021 petition, the father alleged that the mother violated the June 2021 order by depriving him of court-ordered parenting [*4]time on August 26, 2021.[FN1] At the fact-finding hearing, the mother admitted depriving the father of his visitation on this day because child protective services was at her home responding to a report that she was abusing the child. She suspected that it was the father who had called in the report, and she admitted to being "frustrated" so she "did not allow [the father] to take [the child]." While now, on appeal, the mother attempts to paint her testimony in a different light and argues that she was unable to transport the child because child protective services was at her home, this argument is not supported by her testimony. Moreover, even if true, there was no indication that the mother could not have arranged for transportation for the child to go to the father's and remain compliant with the order, thus, inability to comply is not a viable defense for the mother even on her interpretation of these facts (see El-Dehdan v El-Dehdan, 26 NY3d 19, 36 [2015]; compare Matter of Jahari BB. v Zada CC., 232 AD3d at 1147). Regardless of whether the mother's actions in committing these violations were driven by her anger toward the father or her suspicions that he called in the report, these facts provide a sound and substantial basis for a finding that the mother violated the June 2021 order (see McCurty v Roberts, 227 AD3d 1469, 1470-1471 [4th Dept 2024]; Matter of Michelle L. v Steven M., 227 AD3d at 1163-1164).
Garry, P.J., Egan Jr., Aarons and Lynch, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: In his petition, the father alleged that the violation date was August 27, 2021, however the proof at the hearing revealed that it was in fact August 26, 2021.