Leah R. v Taylor R. (2025 NY Slip Op 06938)

Leah R. v Taylor R.

2025 NY Slip Op 06938

Decided on December 11, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 11, 2025

CV-24-0396
[*1]Leah R., Respondent- Appellant,
v
Taylor R., Appellant- Respondent.

Calendar Date:October 8, 2025

Before:Clark, J.P., Aarons, Pritzker, Reynolds Fitzgerald and McShan, JJ.

Cynthia Feathers, Saratoga Springs, for appellant-respondent.
Whiteman Osterman & Hanna LLP, Albany (J. Rochelle Cavanagh of counsel), for respondent-appellant.
Elena Jaffe Tastensen, Saratoga Springs, attorney for the children.

Clark, J.P.
Cross-appeals from a judgment of the Supreme Court (Amy Knussman, J.), entered January 17, 2024 in Saratoga County, ordering, among other things, equitable distribution of the parties' marital property, upon a decision of the court.
Plaintiff (hereinafter the wife) and defendant (hereinafter the husband) were married in 2010 and have two children (born in 2013 and 2016). In August 2021, the wife commenced this divorce action alleging an irretrievable breakdown of the parties' relationship (see Domestic Relations Law § 170 [7]) and seeking, among other things, custody of the parties' children, child support and maintenance.[FN1] In October 2021, Supreme Court (Pelagalli, J.) issued a pendente lite order that awarded the wife interim relief, including temporary maintenance and child support, counsel fees, and exclusive use and occupancy of the marital residence. The order also awarded the parties joint legal custody of the children, and continued a temporary order issued by Family Court granting the wife primary physical custody and setting forth a schedule of supervised parenting time for the husband. By letter order subsequently issued in February 2022, Supreme Court directed the parties to "cooperate and facilitate [r]eunification [c]ounseling between the children and [the husband]," which was to be conducted by a specified therapist the children had been seeing since September 2021. The husband's parenting time gradually increased throughout the proceedings and, by August 2022, he was awarded overnight parenting time with the children on alternating weekends and three hours of unsupervised parenting time on Wednesday evenings.
Following an extensive trial and Lincoln hearings with the children, Supreme Court issued a decision that, among other things, dissolved the parties' marriage, distributed the marital estate, awarded the parties joint legal and physical custody of the children, granted the wife final decision-making authority over educational decisions, directed the parties to continue the children's counseling with a new therapist the wife had retained in October 2022, and awarded maintenance, child support and additional counsel fees to the wife. A judgment of divorce was subsequently issued after Judge Pelagalli retired and it was signed by Judge Knussman (see CPLR 9002). The husband appeals and the wife cross-appeals.[FN2]
The wife challenges the award of joint legal custody,[FN3] arguing that she should have been awarded sole legal custody of the parties' children and/or final decision-making authority on all parenting issues over which the parties cannot agree. The husband does not challenge the award of joint legal custody, but argues that he should have been provided with final decision-making authority on all major issues. After reviewing the record, we discern no basis upon which to disturb the custodial award. "An initial child custody determination is to be based on the best interests of the children, taking into consideration such factors [*2]as the parents' ability to provide a stable home environment for the children, the children's wishes, the parents' past performance, relative fitness, ability to guide and provide for the children's overall well-being, and the willingness of each parent to foster a relationship with the other parent" (Hassan v Barakat, 171 AD3d 1371, 1373 [3d Dept 2019] [internal quotation marks, brackets and citations omitted]; see Eschbach v Eschbach, 56 NY2d 167, 170 [1982]). "Joint [legal] custody is preferred and should be ordered if the parents are able to communicate and make decisions cooperatively" (Hassan v Barakat, 171 AD3d at 1373; see Funaro v Funaro, 141 AD3d 893, 894 [3d Dept 2016]). This Court defers to Supreme Court's factual findings and credibility determinations and will not disturb its custody determination if it is supported by a sound and substantial basis in the record (see Hassan v Barakat, 171 AD3d at 1373; Funaro v Funaro, 141 AD3d at 894).
In awarding the parties joint legal custody, Supreme Court expressed concern that the wife had "not adequately sheltered the children from the parties' discord and these proceedings," but concluded that both parties had "the ability to provide for and guide the children's intellectual and emotional development." Such determination has a sound and substantial basis in the record. Both parties are fit and loving parents, but the wife had not demonstrated an understanding of the importance of involving the husband in parenting decisions. We share the forensic psychologist's concern that the wife may alienate the husband if awarded sole legal custody. At the same time, the wife had been the primary caregiver for the majority of the children's lives and had made sound parenting decisions on their behalf. We also have concerns about awarding the husband wholesale decision-making authority in this case. Although the parties have an acrimonious relationship and have disagreed on several parenting issues, the record reflects that they were communicating effectively on a messaging app and, for the most part, have successfully coparented (see Matter of David JJ. v Verna-Lee KK., 207 AD3d 841, 843 [3d Dept 2022]; Matter of Kanya J. v Christopher K., 175 AD3d 760, 762 [3d Dept 2019], lvs denied 34 NY3d 905 [2019], 34 NY3d 906 [2019]). Indeed, the psychologist who performed a forensic evaluation of the parties recommended an award of joint legal custody in her final October 2022 report, with a suggestion that the wife be ordered to participate in coparenting counseling. Supreme Court (Pelagalli, J.) directed the parties to do so within 30 days of the divorce judgment's entry. In these circumstances, we conclude that there is a sound and substantial basis in the record to support awarding the parties joint legal custody, and that the court properly declined to grant either party wholesale final decision-making authority in this case (see Matter of David JJ. v Verna-Lee KK., 207 AD3d at 843; Matter of Kanya J. v Christopher [*3]K., 175 AD3d at 762; Matter of Patricia RR. v Danielle SS., 172 AD3d 1471, 1472 [3d Dept 2019]).[FN4]
That said, the wife was properly awarded final decision-making authority over educational decisions. The parties' primary dispute at the time of the trial concerned the children's schooling, with the wife desiring to keep them in the private school they were attending and the husband seeking to enroll them in public school. The wife, who holds a bachelor's degree in education policy and a master's degree in special education, was primarily responsible for the children's schooling during the parties' marriage, having homeschooled them herself for a two-year period during the COVID-19 pandemic. She also was previously employed as a sixth-grade math teacher at the same private school the children were attending and was, therefore, familiar with the school's curriculum and teaching philosophy. As the wife was better equipped to make educational decisions on behalf of the children and this was a point of serious contention between the parties, there is no basis to disturb this part of Supreme Court's decision (see Matter of Michael T. v Dana U., 232 AD3d 1058, 1063 [3d Dept 2024]; Matter of Imrie v Lyon, 158 AD3d 1018, 1020 [3d Dept 2018]).
The wife also challenges the award of shared physical custody, arguing that she should have been awarded sole physical custody of the children insofar as she had been their primary caregiver throughout the marriage, the husband had serious medical and mental health issues, and he demonstrated concerning behavior when the children were younger. The wife's allegations in that regard are supported by the record. However,
the husband's concerning behavior largely occurred when the children were infants or toddlers and appeared to be tied to the difficulty of parenting young children. The husband also explained that much of this behavior occurred when he was suffering from the acute effects of a concussion and while he was tapering down prescribed medication. Most importantly, the record demonstrates that the husband had since undergone treatment to address his health issues and mental health concerns, was doing well and was actively participating in counseling. The psychologist who conducted the forensic evaluations of the parties recommended an award of shared physical custody in her final report and expressed no reservations about the husband's ability to provide a positive and nurturing environment for the children, a sentiment also reflected in the fact that he had been having overnight parenting time with the children for over a year without incident by the time of the underlying custody determination. The husband also had the financial means to support the children, as well as safe and appropriate housing. Accordingly, Supreme Court's determination to award the parties shared physical custody has a sound and substantial basis in the record and will not be disturbed (see Matter of Kelly AA. v Christopher AA., 240 AD3d [*4]1011, 1014 [3d Dept 2025]; Matter of Patricia RR. v Daniel SS., 172 AD3d at 1473).
The husband argues that Supreme Court erred in requiring the children to remain in counseling with the therapist that the wife unilaterally retained in October 2022. We agree that the wife showed poor judgment in severing the children's therapeutic relationship with the prior therapist and in unilaterally retaining another therapist. However, continuity of care is imperative and there was no evidence suggesting that the children were not benefitting from therapy with the new counselor.[FN5] As such, we discern no basis to disturb this portion of Supreme Court's determination. That said, we will grant the husband's request to provide the new therapist with a copy of the forensic evaluator's reports. The wife's counsel confirmed during oral argument before this Court that she did not object to the reports being provided to the new therapist and, while we recognize that the reports were authored in 2022 and are now outdated, they provide relevant background information that may aid in the therapeutic process. Accordingly, the attorney for the children is directed to facilitate providing a copy of the reports to the new therapist within 30 days of this decision.
Turning to the distributive award, the wife argues that any challenge is now moot since the marital assets have been distributed as directed. The husband's counsel agreed with that premise during oral argument before this Court. Consequently, the manner in which the marital assets were distributed is no longer at issue on this appeal. Nevertheless, the wife argues that she should have been awarded a credit for the amount she has paid toward the mortgage and other carrying costs on the marital residence. As for the period between entry of the divorce judgment and the date the property is sold, the judgment of divorce awarded the wife possession of the marital residence and made her solely responsible for the mortgage, taxes and carrying charges associated therewith. Therefore, to the extent requested, the wife is not entitled to a credit for this period (see Markov v Markov, 304 AD2d 879, 881 [3d Dept 2003]). Under the circumstances of this case, we also discern no abuse of discretion in Supreme Court's decision to not provide the wife with a credit relative to the payments she made toward the mortgage and other carrying costs during the pendency of the action (see Rech v Rech, 122 AD3d 1286, 1287 [4th Dept 2014], lv denied 25 NY3d 905 [2015]; Soles v Soles, 41 AD3d 904, 906 [3d Dept 2007]; compare Uttamchandani v Uttamchandani, 175 AD3d 1457, 1459 [2d Dept 2019]; Beece v Beece, 289 AD2d 352, 353 [2d Dept 2001]).
We are also unpersuaded by the wife's contention that Supreme Court abused its discretion in imputing $50,000 worth of income to her for purposes of calculating the husband's child support obligation under the Child Support Standards Act (hereinafter the CSSA). "When calculating a party's child support obligation [*5]in a shared custody situation, the court must employ the three-step framework of the CSSA. First, the court must calculate the parties['] combined parental income pursuant to Domestic Relations Law § 240 (1-b) (b) (5) (i). Second, that amount, up to the statutory cap, is multiplied by the specified percentage based upon the number of children. That sum is then allocated in accordance with each parent's pro rata share of the combined parental income. Third, where, as here, the combined parental income exceeds the statutory cap, the court must determine the amount of child support for the amount of the combined parental income in excess of such dollar amount through consideration of the factors set forth in Domestic Relations Law § 240 (1-b) (f) and/or the child support percentage" (Ball v Ball, 150 AD3d 1566, 1567-1568 [3d Dept 2017] [internal quotation marks, brackets and citations omitted]; see Abrams v Abrams, 238 AD3d 736, 737 [2d Dept 2025]).
"[A] court is not bound by a parent's account of his or her own finances" under step one of the CSSA formula, "and may impute income based upon a prior employment experience, as well as such parent's future earning capacity in light of that party's educational background" (Armstrong v Armstrong, 72 AD3d 1409, 1413 [3d Dept 2010] [internal quotation marks and citations omitted]; see DeCrescenzo v Suslak, 238 AD3d 1406, 1408 [3d Dept 2025], lv dismissed 44 NY3d 1004 [2025]). "Absent a demonstrated abuse of the court's discretion, [this Court] will not disturb a determination to impute income to a party" (Gardner v Gardner, 228 AD3d 1074, 1075 [3d Dept 2024] [internal quotation marks, brackets and citations omitted]; see Morille-Hinds v Hinds, 87 AD3d 526, 528 [2d Dept 2011]). Although the pendente lite order imputed $27,300 in income to the wife for purposes of calculating the husband's interim child support obligation, Supreme Court subsequently found, based upon the testimony adduced at trial, that this did not accurately reflect the wife's earning capacity. Supreme Court providently exercised its discretion in this regard. We recognize that the wife's adjusted gross income was only $663 during the 2022 tax year. However, she is highly educated and has a much greater earning potential, possessing joint bachelor's degrees in psychology and public policy, as well as a master's degree in special education. The wife previously made up to $50,000 as a teacher and, by the time of trial, had started a private tutoring business and was substitute teaching. The wife testified at trial that her tutoring business had the potential to "make as much or more money" as she would teaching. Given the wife's education and experience, Supreme Court did not abuse its discretion in imputing $50,000 in income to her for purposes of calculating the husband's postjudgment child support obligation (see DeCrescenzo v Suslak, 238 AD3d at 1408; Matter of Kaye v Hall,231 AD3d 1504, 1505 [4th Dept 2024]; Decker v Decker, 148 AD3d 1272[*6], 1274 [3d Dept 2017]). As neither party challenges Supreme Court's calculations under steps two and three of the CSSA, including its determination not to include income in excess of the applicable $163,000 statutory cap in calculating the husband's support obligation [FN6] (see Domestic Relations Law § 240 [1-b] [c] [2]), there is no basis upon which to disturb the award.
Next, neither party challenges the amount of the postjudgment maintenance award in favor of the wife, but the husband argues that Supreme Court abused its discretion with respect to the award's duration. "The amount and duration of a maintenance award, if any, are a matter within the sound discretion of Supreme Court, and the award will not be disturbed so long as the statutory factors and the parties' predivorce standard of living were properly considered" (Hughes v Hughes, 198 AD3d 1170, 1173 [3d Dept 2021] [internal quotation marks, brackets and citations omitted]). "The overriding purpose of a maintenance award is to give the spouse economic independence, and it should be awarded for a duration that would provide the recipient with enough time to become self-supporting" (Sansone v Sansone, 144 AD3d 885, 886 [2d Dept 2016]). Here, Supreme Court ordered the husband to pay the wife postjudgment maintenance in the amount of $1,330.16 per month for a period of three years, commencing February 1, 2024.[FN7] The award was made "retroactive to the date of commencement," with adjustments for temporary maintenance paid under the pendente lite order. For an 11-year marriage such as the one here, the statutory maintenance guidelines recommend a durational award of 15% to 30% of the length of the marriage, amounting to 20 months on the low end and 40 months on the high end (see Domestic Relations Law 236 [B] [6] [f] [1]). Although the three-year award is near the top of this range, when considering the relevant factors, we cannot conclude that it was an abuse of discretion (see DeCrescenzo v Suslak, 238 AD3d at 1410; Harris v Schreibman, 200 AD3d 1117, 1121 [3d Dept 2021]). We also decline to exercise our own discretion to modify the duration of the award (see generally McCaffrey v McCaffrey, 107 AD3d 1106, 1108 [3d Dept 2013]; Quinn v Quinn, 61 AD3d 1067, 1071 [3d Dept 2009]).
The husband also challenges Supreme Court's determination to award the wife $7,500 in additional counsel fees, arguing that there was no evidence supporting such award and that, given the substantial $25,000 interim fee award granted to the wife during the proceedings, the additional sum was inequitable. The wife argues that she should have been awarded additional counsel fees exceeding $25,000 given the disparity in the parties' income and living expenses. "In any action or proceeding brought . . . for a divorce, . . . the court may direct either spouse . . . to pay counsel fees and fees and expenses of experts directly to the attorney of the other spouse to enable the other party to carry on or defend the action or proceeding [*7]as, in the court's discretion, justice requires, having regard to the circumstances of the case and of the respective parties. There shall be a rebuttable presumption that counsel fees shall be awarded to the less monied spouse" (Domestic Relations Law § 237 [a]). The presumption can be rebutted by "[t]he equitable distribution, maintenance and substantial interim award of fees" (Macaluso v Macaluso, 145 AD3d 1295, 1298 [3d Dept 2016] [internal quotation marks and citation omitted]; see McGovern v McGovern, 218 AD3d 1067, 1074 [3d Dept 2023]). "In an action for a judgment of divorce, a court retains the discretion to direct one party to pay the other party's counsel fees and, absent an abuse of discretion, its determination will not be disturbed" (St. Denny v St. Denny, 185 AD3d 1246, 1248 [3d Dept 2020] [citation omitted]; accord Hughes v Hughes, 200 AD3d 1404, 1411 [3d Dept 2021]). "[I]n exercising its discretionary power to award counsel fees, a court should review the financial circumstances of both parties together with all the other circumstances of the case, which may include the relative merit of the parties' positions" (McGovern v McGovern, 218 at 1074 [internal quotation marks and citations omitted]).
Under the circumstances of this case, we are satisfied that the counsel fee award is grounded on a sufficient basis (see generally Macaluso v Macaluso, 145 AD3d at 1299 [Lynch, J., concurring in part, dissenting in part]; compare Stuart v Stuart, 137 AD3d 1640, 1641 [4th Dept 2016]). Moreover, given the relevant factors of this case, including, among other things, the income disparity between the parties, Supreme Court providently exercised its discretion in awarding the wife, as the less monied spouse, $7,500 in additional counsel fees. However, in light of the equitable distribution, maintenance and substantial interim counsel fee awards, we discern no basis upon which to increase the amount. The parties' remaining contentions, to the extent not expressly addressed, have been considered and found unavailing.
Aarons, Pritzker, Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the judgment is modified, on the law and the facts, without costs, by directing the attorney for the children to facilitate providing a copy of the January 2022 and October 2022 forensic reports to the children's therapist; and, as so modified, affirmed.

Footnotes

Footnote 1: A few days prior to commencing the divorce action, the wife filed a family offense petition against the husband in Family Court alleging that he had engaged in disorderly conduct and harassment. A temporary order of protection was issued that directed the husband to stay away from the wife and children. The family offense proceeding was subsequently transferred to Supreme Court and consolidated with the divorce action. The temporary order of protection has expired and the family offense proceeding was not pursued.

Footnote 2: To the extent the parties appeal from the amended decision memorializing Supreme Court's findings of facts and conclusions of law, this is not an appealable paper (see CPLR 5512 [a]; see Englander v State of New York, 236 AD3d 1204, 1204 n 1 [3d Dept 2025]). Nevertheless, the decision is properly reviewable on the appeal and cross-appeal from the judgment of divorce.

Footnote 3: The attorney for the children advocated for joint legal and physical custody at the trial level and argues on appeal that the custodial award should be affirmed.

Footnote 4: Although courts sometimes delineate specified "spheres of influence" for parties who have difficulty coparenting (Shali D. v Victoria V., 172 AD3d 581, 581 [1st Dept 2019]; Matter of Elizabeth S. v Edgard N., 150 AD3d 585, 586 [1st Dept 2017]), we are not convinced that doing so here is in the children's best interests.

Footnote 5: Relatedly, the wife's contention that Supreme Court erred in permitting hearsay testimony from the children's prior therapist is of no moment, as any error in this regard was harmless.

Footnote 6: The husband initially challenged the failure to do so, but his new attorney confirmed during oral argument before this Court that he is no longer challenging any part of the child support award.

Footnote 7: The judgement of divorce mistakenly recited the husband's maintenance obligation as $1,307.66 per month. The correct monthly maintenance amount, as reflected in the amended findings of fact and confirmed by dividing the yearly maintenance amount articulated in the judgment by 12, is $1,330.16.